EMANUEL DAVEIGA *vs.* BOSTON PUBLIC HEALTH COMMISSION.

Suffolk. February 6, 2007. - July 13, 2007.

Present: GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Massachusetts Tort Claims Act. Municipal Corporations,* Liability for tort. *Practice, Civil,* Presentment of claim under Massachusetts Tort Claims Act. *Notice,* Claim under Massachusetts Tort Claims Act.

Discussion of the Massachusetts Tort Claims Act (act), G. L. c. 258, and its requirement that a claimant, prior to the initiation of a civil action under the act, give written notice to a person authorized to receive the notice pursuant to the act. [436-437]

In an action brought in Superior Court against the Boston Public Health Commission (commission) under the Massachusetts Tort Claims Act, G. L. c. 258 (act), the judge erred in denying the commission's motion to dismiss, made on the ground that the plaintiff's written notice to the mayor of Boston and the Attorney General of the initiation of his suit did not satisfy the presentment requirements under the act, where the commission was neither a city agency (for which the plaintiff's presentment to the mayor would have been sufficient to comply with the act) [437-440] nor a constituent agency of the Commonwealth (for which presentment to the Attorney General would have been sufficient for purposes of the act) [440-442], and where no authority existed to excuse the plaintiff's failure, arising from his misinterpretation of the relevant statutes, to make proper presentment on the commission's executive director [443].

CIVIL ACTION commenced in the Superior Court Department on October 18, 2000.

A motion to dismiss was heard by *Christopher J. Muse,* J.

After review by the Appeals Court, 66 Mass. App. Ct. 1104 (2006), the Supreme Judicial Court granted leave to obtain further appellate review.

*John M. Townsend (Christine M. Hayes* with him) for the defendant.

*Victor G. DeSousa* for the plaintiff.

*Martha Coakley,* Attorney General, *& Peter Sacks,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

COWIN, J. Certain tort claims against the Commonwealth, its municipalities, and some other government bodies are permitted by the Massachusetts Tort Claims Act, G. L. c. 258 (the act). The act contains a requirement of presentment,[1] that is, it requires that a particular person be given written notice of a claim before initiation of suit. The sole question before us is to whom presentment must be made of a claim for tort damages against the Boston Public Health Commission (the commission). We conclude that, under G. L. c. 258, § 4, presentment on the commission must be to its executive director, and not, as the plaintiff argues, to the mayor of Boston or to the Attorney General.

*Background.* The facts are undisputed. On September 8, 1998, the plaintiff allegedly was injured at the Long Island Shelter, which is operated by the commission. The plaintiff made presentment of a claim for damages to the mayor of the city of Boston and to the Attorney General. The mayor did not respond to the presentment notice and the Attorney General forwarded the claim to the Executive Office of Health and Human Services, which investigated and denied the claim. The plaintiff then timely initiated a civil action against the city, but later, following notice from the city that the proper defendant was the commission, the plaintiff voluntarily dismissed the suit against the city.

The plaintiff then filed a civil action against the commission, but he did so without making presentment to any officer of the commission. Asserting defective presentment, the commission moved to dismiss. In opposing the motion, the plaintiff contended that presentment to the mayor was sufficient. A judge in the Superior Court agreed with the plaintiff and denied the motion. The commission appealed to the Appeals Court,[2] which reversed in an unpublished memorandum and order pursuant to its Rule 1:28. *Daveiga* v. *Public Health Comm'n of Boston*, 66

---

[1] Presentment is the presentation of a claim in writing. See G. L. c. 258, § 4.

[2] The defendant petitioned a single justice of the Appeals Court pursuant to G. L. c. 231, § 118, for relief from the order denying its motion to dismiss. The single justice denied relief because the denial of a motion to dismiss predicated on the immunity provisions of G. L. c. 258 is immediately appealable under the doctrine of present execution. See *Kent* v. *Commonwealth*, 437 Mass. 312, 316-317 (2002). Because relief under G. L. c. 231, § 118, was not available, the single justice instead granted leave to file a late notice of appeal from the trial court's order.

Mass. App. Ct. 1104 (2006). The Appeals Court concluded that the act required presentment to the commission's executive director. We granted further appellate review and requested supplemental briefing on the previously unaddressed question whether the plaintiff's presentment to the Attorney General was sufficient to comply with the act.[3] Like the Appeals Court, we reverse the denial of the motion to dismiss.

*Relevant law.* General Laws c. 258 replaced the common-law scheme by which the Commonwealth and its municipalities enjoyed immunity from suit for tortious wrongdoing, subject only to miscellaneous exceptions. See *Triplett* v. *Oxford*, 439 Mass. 720, 724 (2003), and cases cited. See also *Lafayette Place Assocs.* v. *Boston Redevelopment Auth.*, 427 Mass. 509, 532 (1998), cert. denied, 525 U.S. 1177 (1999). It authorized tort suits that previously had been prohibited, but established requirements and limitations for those actions.[4] One of these requirements is that, prior to the initiation of a civil action under the act, a claimant must give written notice to a person authorized to receive the notice pursuant to the act.[5] G. L. c. 258, § 4. The act requires that this presentment be made on the "executive officer" of the entity sued. *Id.* However, it provides also that, "in the case of a city or town," presentment to any of a number of municipal officials, including the mayor,[6] is sufficient, and in the case of the

---

[3]We acknowledge the amicus brief of the Attorney General.

[4]The act applies to "public employer[s]" as defined by G. L. c. 258, § 1. See G. L. c. 258, §§ 2-9. It is undisputed that the commission is a "public employer" for purposes of the act and is subject to its provisions. There is no suggestion that the commission falls within the act's limited exemption for "independent bod[ies] politic and corporate," G. L. c. 258, § 1, which applies only to entities that enjoy political and financial independence. See *Lafayette Place Assocs.* v. *Boston Redevelopment Auth.*, 427 Mass. 509, 529, 532-533 (1998), cert. denied, 525 U.S. 1177 (1999); *Commesso* v. *Hingham Hous. Auth.*, 399 Mass. 805, 807-808 (1987).

[5]General Laws c. 258, § 4, first par., provides in part:

"A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . . ."

[6]Under the act, the mayor is the presumptive "executive officer" of a city. G. L. c. 258, § 1.

Commonwealth or its constituent agencies, presentment may be made to the Attorney General.[7] *Id.*

*Presentment to the mayor.* The plaintiff claims that the commission is merely part of the city of Boston, so that presentment to the mayor is sufficient to comply with the act. The commission contends that it is not a city agency, and thus that only presentment to the commission's executive director suffices.[8] We reject the plaintiff's contention. We recognize that the commission resembles a city agency in some respects. Although the commission's enabling act provides that the commission is subject to the supervision of the city of Boston only as specified, St. 1995, c. 147, § 3 (*a*), the commission is significantly dependent on the city and its mayor both politically and financially. For example, the enabling act provides for the mayor to appoint six of the commission's seven board members and approve the commission's budget. *Id.* at §§ 3 (*b*), 8 (*c*). It also provides that "the commission shall have the powers and perform the duties from time to time conferred or imposed on boards of health of cities." *Id.* at § 6 (*b*).

Notwithstanding these connections to the city, the commission does not have the legal status of a city agency. Dispositive in our view is the fact that the commission is organized as a "body politic and corporate and political subdivision of the [C]ommonwealth." *Id.* at § 3 (*a*). This precise language appears

---

[7]General Laws c. 258, § 4, second par., provides:

"Notwithstanding the provisions of the preceding paragraph, in the case of a city or town, presentment of a claim pursuant to this section shall be deemed sufficient if presented to any of the following: mayor, city manager, town manager, corporation counsel, city solicitor, town counsel, city clerk, town clerk, chairman of the board of selectmen, or executive secretary of the board of selectmen; provided, however, that in the case of the commonwealth, or any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof, presentment of a claim pursuant to this section shall be deemed sufficient if presented to the attorney general."

[8]The executive director of the commission is the body's "executive officer" for purposes of the act. See G. L. c. 258, § 1 (providing that, unless otherwise stated, "[e]xecutive officer" of public employer is its "nominal chief executive officer or board"); St. 1995, c. 147, § 4 (*a*) (providing that executive director of commission is its chief executive officer).

in the enabling acts of only a select few governmental bodies, such as the Massachusetts Bay Transportation Authority (MBTA), G. L. c. 161A, § 2; the various regional transit authorities, G. L. c. 161B, § 2; the Massachusetts Municipal Wholesale Electric Company, St. 1975, c. 775, § 2; the Springfield Parking Authority, St. 1981, c. 674, § 3; bodies organized under the model water and sewer commission act, G. L. c. 40N, § 4; and the Boston Water and Sewer Commission, St. 1977, c. 436, § 3. See *Simmons* v. *Clerk-Magistrate of the Boston Div. of the Housing Court Dep't*, 448 Mass. 57, 62-63 (2006). Nowhere is this language used to create a city department, board, or commission. By contrast, the act that created the department of health and hospitals, which was one of the commission's predecessor entities[9] and was considered a department of the city, states: "There shall be *in the city of Boston* . . . a *department* . . . ." St. 1965, c. 656, § 1 (emphasis added). The commission's own enabling act likewise defines its predecessor as a "department of the city," St. 1995, c. 147, § 2, while conspicuously lacking any similar reference to the commission itself.[10] The Legislature knew well how to organize the commission as a city department similar to its predecessor, but instead chose deliberately to make it a "body politic and corporate and political subdivision of the [C]ommonwealth." In so doing, the Legislature has made the commission an entity that is legally distinct from the city of Boston. Accordingly, presentment to the mayor of Boston does not satisfy the requirements of G. L. c. 258, § 4.

Equally crucial to our determination that the commission is not part of the city for presentment purposes is the fact that the

---

[9]The commission's other predecessor entity, created by the same act, was the trustees of health and hospitals of the city of Boston. See St. 1965, c. 656, § 4; St. 1995, c. 147, § 6 (*b*).

[10]The plaintiff places great reliance on an isolated statement that the commission is to be considered a "municipal department of health," as defined in G. L. c. 30B, § 1 (*b*) (27). See St. 1995, c. 147, § 7 (*a*) (13). Chapter 30B, however, deals with the narrow subject of "contract[s] for the procurement of supplies, services or real property and for disposing of supplies or real property by a governmental body." G. L. c. 30B, § 1. It does not follow that, by designating the commission a "municipal department of health" in this limited context, the Legislature intended to make it a city department for all other purposes, particularly since it is not referred to as such anywhere else in the enabling act.

city is not liable for the commission's torts. The purpose of the presentment requirement is to "ensur[e] that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." *Gilmore* v. *Commonwealth*, 417 Mass. 718, 721-722 (1994), quoting *Lodge* v. *District Attorney for the Suffolk Dist.*, 21 Mass. App. Ct. 277, 283 (1985). This purpose is not served by allowing presentment to an official who is not responsible for claims against the entity at issue and thus has no authority to investigate or settle such claims on its behalf. Here, the commission's enabling act imposes on the commission, and not the city, "all debts, liabilities, and other obligations of the city" pertaining to the commission's predecessor entities. See St. 1995, c. 147, § 6 (*c*). Significantly, it expressly excludes tort liability arising out of events prior to transfer of control to the commission, which "shall not be assumed by or imposed upon the commission but shall continue to be the liabilities of the city." *Id.* The unmistakable meaning of this limited exception to the commission's tort liability is that the commission is liable for its torts. It would be illogical to make special provision for the city's liability for a narrow subset of torts if the city were in fact liable for all the torts of the commission. Furthermore, making the city liable for the commission's torts, as though the commission were a city department, would contradict § 3 (*a*) of the enabling act, discussed at length *supra*, which makes the commission a "body politic and corporate and political subdivision of the [C]ommonwealth." Because the commission itself is the entity with the authority to investigate and settle tort claims against it, allowing presentment of a tort claim to the mayor of Boston would defeat the purpose of presentment.

The plaintiff nonetheless argues that presentment to the mayor was sufficient because a provision of the commission's enabling act states that it has the power to "sue and be sued, prosecute and defend actions relating to its properties and affairs, and to be liable in tort in the same manner as" the department of health and hospitals. St. 1995, c. 147, § 7 (*a*) (11). Insofar as the plain-

tiff interprets this clause to mean that the city is liable for the commission's torts, as just discussed, such an interpretation would be contrary to the rest of the enabling act. "[A] statute should be read as a whole to produce an internal consistency." *Telesetsky* v. *Wight*, 395 Mass. 868, 873 (1985). This is not to say that § 7 (*a*) (11) is superfluous; as the commission points out, the language can mean, among other things, that the commission is to be considered a "public employer" for purposes of tort liability under the Massachusetts Tort Claims Act "in the same manner as" its predecessor. See note 4, *supra.*

Finally, to the extent that the commission's predecessors may have asserted in previous litigation that the mayor was the official to whom presentment of claims against them should be made, see, e.g., *Johnson* v. *Trustees of Health & Hosps. of Boston*, 23 Mass. App. Ct. 933, 935 (1986), the plaintiff presents no authority that would bind the commission to such assertions, or estop it from taking a contrary position based on its entirely different enabling act. For the above reasons, presentment to the mayor is not sufficient under G. L. c. 258, § 4. Presentment to the commission's executive director, who is its "executive officer" pursuant to the statute, see note 8, *supra*, is proper.

*Presentment to the Attorney General.* There remains another possibility: that the commission is one of those constituent agencies of the Commonwealth for which presentment to the Attorney General is also sufficient pursuant to the second paragraph of G. L. c. 258, § 4. See note 7, *supra.* That provision allows presentment to the Attorney General of a tort claim against "the [C]ommonwealth, or any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof." *Id.* This list of entities, while broad, is not exhaustive; the provision does not allow presentment to the Attorney General of a claim against any public employer other than a city or town.[11] Rather, it allows presentment to the Attorney General only of claims against the Commonwealth itself or its various constituent agencies. We agree with the commission (and the Attorney General as amicus) that

---

[11]For instance, although a "county," an "educational collaborative," and a "district" are all included in the definition of a "public employer" under G. L. c. 258, § 1, they are not mentioned in this list.

the commission is not part of the Commonwealth — i.e., it is not "the [C]ommonwealth" or a "commission . . . thereof" for purposes of the provision — and that presentment to the Attorney General is thus not sufficient.

Although created by statute, the commission has little or no connection with, or political or financial dependence on, the Commonwealth. Cf. G. L. c. 10, §§ 70-72 (creating Alcoholic Beverages Control Commission, funded by legislative appropriations, with members who are appointed and removable by Treasurer and who report to Governor, Treasurer, and Legislature). As discussed *supra*, the commission was created as a "body politic and corporate and political subdivision of the [C]ommonwealth." St. 1995, c. 147, § 3 (*a*). We have often held entities denoted "bod[ies] politic and corporate" to be neither the Commonwealth nor parts thereof. See *Miller* v. *Secretary of the Commonwealth*, 428 Mass. 82, 86-87 (1998) (Massachusetts Technology Park Corporation, organized as body politic and corporate under St. 1982, c. 312, § 3, not "institution" of Commonwealth); *Opinion of the Justices*, 334 Mass. 721, 734 (1956) (Massachusetts Turnpike Authority, created as body politic and corporate, "not merely a board or commission of the State government"); *Opinion of the Justices*, 322 Mass. 745, 752 (1948) (housing authorities, which are "bod[ies] politic and corporate" under G. L. c. 121B, § 3, "have a genuine existence of their own which is distinct from the existence of the Commonwealth"). Typical of such entities, the commission has the power to hold property, St. 1995, c. 147, §§ 6 (*c*), 7 (*a*) (13); make contracts, *id.* at § 7 (*a*) (13); issue bonds, *id.* at § 7 (*b*); and "sue and be sued" in its own right, *id.* at § 7 (*a*) (11). See *Miller* v. *Secretary of the Commonwealth, supra* at 87; *Opinion of the Justices*, 334 Mass. 721, 733-734 (1956). It is thus not an arm of the Commonwealth but "ha[s] a genuine existence of [its] own which is distinct from the existence of the Commonwealth." *Opinion of the Justices*, 322 Mass. 745, 752 (1948).

Nor does the commission's status as a "political subdivision of the [C]ommonwealth" make it an agency of the Commonwealth. "There is a distinction between the Commonwealth and its agencies on the one hand and political subdivisions of the Commonwealth on the other." *Okongwu* v. *Stephens*, 396 Mass. 724,

730 (1986). "Political subdivision of the Commonwealth" is a term of art traditionally associated with cities, towns, and other units of local government,[12] which are neither the Commonwealth itself nor its agencies. See *Opinion of the Justices*, 322 Mass. 745, 752 (1948) ("a housing authority is not the Commonwealth itself any more than a city would be the Commonwealth"). Thus, where the Legislature has intended a provision to apply to both the Commonwealth and its political subdivisions, it has stated so explicitly.[13] Here, the term "political subdivision" is conspicuously absent from the long list of entities for which presentment to the Attorney General is sufficient. "We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design." *Commonwealth* v. *McLeod*, 437 Mass. 286, 294 (2002). See *Grand Jurors for Middlesex County for the Year 1974* v. *Wallace*, 369 Mass. 876, 880 (1976).

Because the commission is neither the "[C]ommonwealth" nor a "commission . . . thereof," presentment to the Attorney General is not sufficient under the act. Nor would presentment to the Attorney General of a claim against the commission any more serve the purpose of the presentment requirement than would presentment to the mayor, as discussed *supra*, given the commission's limited connection to the Commonwealth.

---

[12]See, e.g., G. L. c. 62F, § 2 (for purposes of chapter on limitation on growth of state tax revenues, " 'Local Governmental Unit' means any city, town, county, district or other political subdivision of the Commonwealth"). See also G. L. c. 31, § 5 (*c*) (referring to "city or town or other political subdivision of the [C]ommonwealth" in provision regarding qualifications for civil service); G. L. c. 32B, § 3A, fourth par. (referring to "[a]ny city, town, county, or other political subdivision of the [C]ommonwealth" in section on insurance claim trust funds).

[13]See, e.g., G. L. c. 4, § 7, Twenty-sixth (public records statute applies to "any agency, executive office, department, board, commission, bureau, division or authority of *the [C]ommonwealth, or of any political subdivision thereof*") (emphasis added); G. L. c. 23G, § 29 (bonds issued by Massachusetts Development Finance Agency are free from taxation by "*the [C]ommonwealth* and by the cities, towns *and other political subdivisions in the [C]ommonwealth*") (emphasis added); G. L. c. 150E, § 1 (public employer labor relations statute applies to "*the [C]ommonwealth* acting through the commissioner of administration, or any county, city, town, district, *or other political subdivision* acting through its chief executive officer") (emphasis added). Cf. G. L. c. 64C, § 2 ("The licensing of the operation of cigarette vending machines is retained exclusively by *the [C]ommonwealth* and *no city, town or other political subdivision of the [C]ommonwealth* may license such operation") (emphasis added).

*Circumstances excusing presentment.* In denying the commission's motion to dismiss for improper presentment, the judge reasoned that the suit should be permitted because inadequate presentment was excused by "confusion" in the commission's enabling statute. He concluded also that the public policy behind presentment was satisfied by notice to the mayor. We disagree.

The mayor of the city of Boston is not the official to whom presentment must be made for a claim against the commission. In addition, no authority has been brought to our attention that would excuse failure to make effective presentment of a claim to a public employer because of a misinterpretation of relevant statutes. Presentment must be directed to the official of the defendant public employer who possesses authority to investigate and ensure that its interests will be protected. See *Gilmore* v. *Commonwealth*, 417 Mass. 718, 721-722 (1994). Pursuant to statute, the executive director of the commission, and not the mayor, has direct authority to investigate claims of injury concerning commission employees and property. Because it is undisputed that there was no presentment to the commission's executive director, the suit must be dismissed.[14]

*Conclusion.* The judgment of the Superior Court denying the commission's motion to dismiss is reversed. The case is remanded to the Superior Court for entry of an order allowing the motion to dismiss.

*So ordered.*

---

[14]Nor can it be said that any action by the commission "lulled" the plaintiff into a failure to make proper presentment or that the commission's executive director had actual knowledge of the plaintiff's written presentment. Cf. *Lopez* v. *Lynn Hous. Auth.*, 440 Mass. 1029, 1030-1031 (2003); *Vasys* v. *Metropolitan Dist. Comm'n*, 387 Mass. 51, 57 (1982).